UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case Number: 23-20186-CR-MARTINEZ

UNITED STATES OF AMERICA

v.

ADONI LOPEZ, RAUL FELIZ, and JHON
CARLOS CASTANEDA SUAREZ,

    Defendants.
_____/

## ORDER DENYING MOTION TO DISMISS INDICTMENT

THIS CAUSE came before this Court upon Defendant Adoni Lopez's Motion to Dismiss Indictment (the "Motion"), (ECF No. 23).[1] This Court has reviewed the Motion, pertinent portions of the record, and applicable law and is otherwise fully advised in the premises. Accordingly, after careful consideration, the Motion is **DENIED** for the reasons set forth herein.

### I. BRIEF FACTUAL BACKGROUND

As alleged in the Criminal Complaint, on or about April 14, 2023, a United States Customs and Border Protection Marine Patrol Aircraft (the "MPA") detected Defendants' "go-fast" vessel (the "GFV") approximately 130 nautical miles north of La Guajira, Colombia. (Crim. Compl. ¶ 3, ECF No. 1, at 3–4.) The GFV had three individuals, a large reserve of fuel, and visible packages onboard but no indicia of its nationality. (*Id.*) The HNLMS *Holland* was diverted to interdict and investigate the GFV. (*Id.*) The United States Coast Guard took lawful tactical control of the

---

[1] Defendants Raul Feliz and Jhon Carlos Castaneda Suarez timely separately moved to adopt the Motion as their own. (ECF No. 25; ECF No. 26.) Being that the circumstances detailed in the Motion are substantially similar, if not the same, with regard to all Defendants, Defendant Raul Feliz's Motion to Adopt and Conform Applicable Motion to Dismiss Indictment of Co-Defendant Adoni Lopez ("Mr. Feliz's Motion"), (ECF No. 25), and Defendant Jhon Carlos Castaneda Suarez's Motion to Adopt Co-Defendant Adoni Lopez's Motion to Dismiss (Mr. Castaneda Suarez's Motion"), (ECF No. 26), are **GRANTED**, and the Motion will be discussed as a joint motion. Accordingly, this Court will collectively refer to Mr. Lopez, Mr. Feliz, and Mr. Castaneda Suarez as "Defendants" when appropriate.

HNLMS *Holland*, and once in the vicinity of where the MPA detected the GFV, the HNLMS *Holland* deployed a boarding team and a helicopter. (*Id.*) When the HNLMS *Holland*'s helicopter's crew spotted the GFV, they reported that the GFV was non-compliant with their command, prompting the helicopter's crew to fire ineffective warning shots. (*Id.* ¶ 4.) Thereafter, the helicopter's crew fired effective disability shots, and the boarding team took control of the GFV. (*Id.*) As alleged in the Criminal Complaint, once the boarding team was onboard, the three individuals aboard the GFV (later identified as Defendants) recognized Mr. Lopez as the master of the vessel. (*Id.* ¶¶ 4–5.) Mr. Lopez made no claim of nationality for the GFV. (*Id.* ¶ 5.) The vessel was, therefore, treated as stateless under the Maritime Drug Law Enforcement Act, 46 U.S.C. § 70502(d)(1)(A) (the "MDLEA").[2] (*See id.*) The boarding team ultimately recovered approximately 663 kilograms of cocaine from the GFV, and Defendants were arrested and transferred to the HNLMS *Holland*. (*Id.* ¶ 5, at 4.)

On April 24, 2023, Defendants were charged by criminal complaint with conspiracy to possess with intent to distribute cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1), 70506(b). (*Id.* at 1.) Defendants made their initial appearances in the Southern District of Florida on April 25, 2023. (ECF Nos. 4–6.) On April 27, 2023, Defendants were each charged by indictment with one count of conspiracy to possess with intent to distribute at least five kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 26 U.S.C. §§ 70503(a)(1), 70506(b), and one count of possessing with intent to distribute at least five kilograms of cocaine on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C.§ 70503(a)(1). (Indictment 1–2,

---

[2] Defendants do not challenge the classification of the GFV as "stateless" in the Motion. (*See generally* ECF No. 23.)

ECF No. 7.) Now, Defendants move to dismiss the Indictment, (ECF No. 23), and the Government responded in opposition to the Motion, (ECF No. 24.)

## I. LEGAL STANDARD

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). A defendant's motion on the basis that a court lacks subject matter jurisdiction "may be made at any time while the case is pending." Fed. R. Crim. P. 12(b)(2). "Under [Federal Rule of Criminal Procedure] 12(b), an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should [be] developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) (first citing *United States v. Korn*, 557 F.2d 1089, 1090–91 (5th Cir. 1977); and then citing *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (5th Cir. 1978)). When considering a motion to dismiss an indictment, this Court must take the allegations set forth in the indictment as true and viewed in the light most favorable to the Government. *See id.*; *Cadillac Overall Supply*, 568 F.2d at 1082.

## II. DISCUSSION

Defendants argue that this Court should dismiss the Indictment for two reasons: (1) the United States and this Court lack jurisdiction over Defendants because the MDLEA is limited to offenses occurring on the "high seas," as defined by custom international law, and Defendants were within Colombia's Exclusive Economic Zone (the "EEZ"), which Defendants argue is not the high seas, when they were interdicted; and (2) the exercise of jurisdiction over Defendants in this case violates due process and principles of fundamental fairness as because Defendants' alleged crimes have no "nexus" to the United States and Defendants do not have sufficient

minimum contacts to bring them within the United States' and this Court's jurisdiction. This Court rejects Defendants' arguments and addresses each in turn.

### A. *The MDLEA*

Article 1, section 8, clause 10 of the U.S. Constitution grants Congress "three distinct grants of power: the power to define and punish piracies, the power to define and punish felonies committed on the high seas, and the power to define and punish offenses against the law of nations." *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2012) (citing *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 158–59 (1820)); *see also* U.S. Const. art I, § 8, cl. 10 (the "Define and Punish Clause"). Pertinent to this action, the "Felonies Claus," a subclause of the Define and Punish Clause, provides Congress the authority "[t]o define and punish . . . Felonies committed on the high Seas . . . ." *See* U.S. Const. art. I, § 8, cl. 10; *see also Bellaizac-Hurtado*, 700 F.3d at 1248 ("[T]he Felonies Clause is textually limited to conduct on the high seas . . . .") (citing U.S. Const. art. I, § 8, cl. 10)). Pursuant to its authority under the Felonies Clause, Congress passed the MDLEA in 1986, *e.g.*, *Bellaizac-Hurtado*, 700 F.3d at 1257 ("[W]e have always upheld extraterritorial convictions under our drug trafficking laws as an exercise of power under the Felonies Clause."); *United States v. Hernandez*, 864 F.3d 1292, 1303 (11th Cir. 2017); *United States v. Campbell*, 743 F.3d 802, 809–10 (11th Cir. 2014), making it a federal crime to, when on certain vessels, traffic in a controlled substance while on the high seas, 46 U.S.C. §§ 70501–70508.

### B. *Whether the Interdiction Occurred on the High Seas*

Defendants' first challenge to the Indictment concerns whether Defendants' interdiction occurred on the high seas. (ECF No. 23 at 3–10.) Defendants correctly note that, because Congress's authority to enact the MDLEA emanates from the Felonies Clause, the Government's jurisdiction is limited to those offenses that are "committed on the high seas." *See, e.g.*, *Bellaizac-*

4

*Hurtado*, 700 F.3d at 1258. Defendants argue, however, that the MDLEA is unconstitutional as applied to Defendants because they were not interdicted, and the crimes with which they are charged did not occur, on the high seas as they were interdicted within Colombia's EEZ, approximately 130 nautical miles from La Guajira, Colombia. (ECF No. 17, at 3.) Defendants submit, therefore, that the definition of "high seas" should exclude a state's EEZ, pursuant to how "high seas" is defined under customary international law. In the Motion, Defendant states that

> [u]nder customary international law as reflected in the 1982 United Nations Convention on the Law of the Sea and without prejudice to high seas freedoms that may be exercised within exclusive economic zones pursuant to article 58 of the United Nations Convention on the Law of the Sea, and unless the context clearly requires otherwise ... the high seas means waters that are not the exclusive economic zone (as defined in § 2.30), territorial sea (as defined in § 2.22), or internal waters of the United States or any other nation.

(*Id.* at 8.) In other words, Defendants argue that a state's EEZ is neither its territorial waters nor the high seas. (*Id.*)

The Government argues in opposition that the Eleventh Circuit's precedent is clear: "a vessel outside of the recognized 12-mile limit of a nation's territorial seas is a 'vessel located within international waters' and subject to MDLEA jurisdiction." (ECF No. 24 at 5 (quoting *United States v. McPhee*, 336 F.3d 1269, 1273 (11th Cir. 2003)).) To be sure, the Eleventh Circuit is steadfast in its position that vessels are on the high seas when they are outside the twelve nautical miles of a nation's coast under the MDLEA. *E.g.*, *United States v. Gruezo*, 66 F.4th 1284, 1292–93 (11th Cir. 2023) (per curiam); *United States v. Santos-Santana*, No. 22-10367, 2022 WL 17973602, at *7 (11th Cir. Dec. 28, 2022) ("While [the defendants] argue that the EEZ is excluded from the high seas, regulations provide that the territorial definition of the high seas includes all waters seaward of the territorial sea baseline, which can extend no farther than twelve nautical miles adjacent to the coast of a nation. Further, prior panel precedent compels us to hold that [the

defendants'] vessel was in the high seas, as it was not within the twelve nautical miles of a nation's coast."). And district courts in this District have uniformly held that the waters seaward of a nation's territorial sea (twelve nautical miles from that nation's coast), including its EEZ, are part of the high seas. *E.g.*, *United States v. Iona-Dejesus*, No. 22-20473-CR, 2023 WL 3980082, at *3 (S.D. Fla. May 4, 2023) ("Unfortunately for Defendants, the Eleventh Circuit has defined the high seas to constitute 'all waters which are neither territorial seas nor internal waters of the United States or any foreign country." (quoting *McPhee*, 336 F.3d at 1273)); *United States v. Hernandez Osorio*, No. 22-cr-20592, 2023 WL 2915838, at *3–4 (S.D. Fla. Apr. 12, 2023); *United States v. Waters*, No. 21-20582-CR, 2022 WL 1224728, at *4 (S.D. Fla. Apr. 26, 2022); Order on Motion to Dismiss Indictment at 9, *United States v. Martinez*, No. 22-20040-CR (S.D. Fla. Nov. 22, 2021), ECF No. 28 ("This Court . . . holds that a nation's EEZ is not part of its territorial waters; rather, a nation's EEZ is part of the high seas for MDLEA purposes."); Order at 7, *United States v. Alfonso*, No. 21-20306-CR (S.D. Fla. Nov. 22, 2021), ECF No. 47 ("[T]he Eleventh Circuit and other courts define the area outside of 12 miles from a nation's coast—and thus, a nation's [EEZ]—as the high seas for the purposes of the MDLEA." (citing *McPhee*, 336 F.3d at 1273)). Applying the binding precedent in this Circuit and declining Defendant's invitation to overlook same, this Court finds that a nation's EEZ is not part of its territorial waters; rather, a nation's EEZ is part of the high seas for MDLEA purposes.

Therefore, this Court finds that the MDLEA is constitutional as applied to Defendants because it is undisputed that Defendants were interdicted while on the high seas (approximately 130 miles north of La Guajira, Colombia) and within the United States' and this Court's jurisdiction. Accordingly, the Motion, (ECF No. 17), is **DENIED** in this respect.

C. *Whether Congress Has the Authority to Regulate Extraterritorial Drug Trafficking Offenses Within a Foreign Nation's EEZ*

Defendant's second challenge to the Indictment is, "for preservation purposes, . . . that Congress lacks the Article I authority to regulate extraterritorial drug trafficking offenses bearing no nexus to the United States occurring within a foreign nation's EEZ." (ECF No. 23 at 3.) Defendants argue that "this Court's exercise of jurisdiction over them violates due process because their offenses lacked any ties to the United States . . . ." (*Id.*) In response, the Government notes that the Eleventh Circuit has, time and time again, rejected as applied challenges to the MDLEA's constitutionality in cases involving stateless vessels on the high seas. (ECF No. 24 at 16–17 (collecting cases).) And Defendants concede as much, for good reason. The law in this Circuit is clear: the MDLEA is constitutional as applied to unregistered vessels on the high seas. *See, e.g.*, *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020); *Campbell*, 743 F.3d at 812; *United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003).

Most recently, in *Cabezas-Montano*, the Eleventh Circuit made explicit that the MDLEA is constitutional when it addressed some of the arguments Defendants raise here in the Motion:

> First, this Court has held that the MDLEA is a valid exercise of Congress's power under the Felonies Clause as applied to drug trafficking crimes without a "nexus" to the United States. . . .
>
> Second, this Court has held that the Fifth Amendment's Due Process Clause does not prohibit the trial and conviction of aliens captured on the high seas while drug trafficking because the MDLEA provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas. . . . The defendants' MDLEA convictions thus do not violate their due process rights even if their offenses lack a "nexus" to the United States. . . .
>
> [And t]hird, this Court has held that, because the MDLEA's jurisdictional requirement goes to the subject-matter jurisdiction of the courts and is not an essential element of the MDLEA substantive offense, it does not have to be submitted to the jury for proof beyond a reasonable doubt.

*Cabezas-Montano*, 949 F.3d at 586–87 (citations omitted). There, the Eleventh Circuit expressly concluded that, "[b]ased on our binding precedent, we conclude that the defendants have not shown that the MDLEA is unconstitutional." *Id.* at 588. Therefore, to the extent Defendants' due process arguments are expressly foreclosed by binding precedent in this Circuit, the Motion is **DENIED**.

Defendants also argue that this Court should dismiss the indictment because this Court's "exercise of jurisdiction in this case is inconsistent with 'traditional notions of fair play and substantial justice.'" (ECF No. 23 at 12 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).) In support of this proposition, Defendants aver that

> Defendants were neither present in the United States nor any United States territory at the time of the offenses. They are not U.S. nationals, nor were they domiciled here prior to their arrests. They carried on no business or activity in the United States. There is no evidence that the drugs were destined for the United States, or that the offenses would have a direct and foreseeable effect within the United States.

(*Id.* at 12–13.) Defendants go on to state that "[t]he exercise of civil jurisdiction under circumstances such as these would clearly violate due process." (*Id.* at 13 (citing *Int'l Shoe*, 626 U.S. at 316).) Relying on the Ninth Circuit's decision in *United States v. Zakharov*, 468 F.3d 1171, 1177 (9th Cir. 2006), Defendants ask this Court to find that due process requires that there be a nexus between the United States and Defendants' alleged criminal activity under the MDLEA using the "minimum contacts" analysis required when determining whether a federal court has personal jurisdiction over a defendant in a civil case. (ECF No. 23 at 13 (citing *Zakharov*, 468 F.3d at 1177).)

But, as the Government makes clear in its Response to the Motion, no binding precedent in this Circuit requires that there be a nexus, or "analogous minimum contacts," between a vessel subject to the jurisdiction of the United States, or its crew, and the United States under the

MDLEA.³ *See, e.g.*, *Gruezo*, 66 F.4th at 1292–93 (holding that MDLEA does not violate Due Process Clause even when there is no "minimum contacts" or "nexus" standard to bring a prosecution under MDLEA); Cabezas-*Montano*, 949 F.3d at 587 ("[T]his Court has held that the Fifth Amendment Due Process Clause does not prohibit the trial and conviction of aliens captured on the high seas while drug trafficking because the MDLEA provides clear notice that all nations prohibit and condemn drug trafficking aboard stateless vessels on the high seas." (citing *Rendon*, 354 F.3d at 1326)); *United States v. Napa Moreira*, 810 F. App'x 702, 705–06 (11th Cir. 2020) ("Here, [the defendant] fails to demonstrate that the absence of a 'minimum contacts' or 'nexus' requirement in the MDLEA violates the Due Process Clause, facially or as applied to his case, under plain-error review."). As the Eleventh Circuit recently made clear, there is "no precedent from this Court or the Supreme Court applying the 'minimum contacts' standard to the MDLEA, and [the defendant's] 'nexus' argument is foreclosed by our precedent." *Gruezo*, 66 F.4th at 1293. In so holding, the Eleventh Circuit stated that, "given that trafficking drugs is 'condemned universally by law-abiding nations,' it is not 'fundamentally unfair' to punish those who traffic drugs on the high seas." *Id.* (citing *Campbell*, 743 F.3d at 810).

In light of the precedent in this Circuit rejecting "as applied" challenges to the MDLEA's constitutionality to unregistered vessels on the high seas with no ties to the Untied States, *see, e.g.*, Cabezas-*Montano*, 949 F.3d at 587; *Campbell*, 743 F.3d at 806; *Rendon*, 354 F.3d at 1325; *United States v. Hernandez Osorio*, No. 22-cr-20592, 2023 WL 2915838, at *7 (S.D. Fla. Apr. 12, 2023)

---

³ In fact, even the *Zakharov* court expressly stated that it "do[es] not require nexus for stateless vessels"—which Defendants' GFV was, as alleged in the Indictment. *See Zakharov*, 468 F.3d at 1177 n.4 (first citing *United States v. Perlaza*, 439 F.3d 1149, 1161 (9th Cir. 2006); and then citing *United States v. Moreno-Morillo*, 334 F.3d 819, 829 (9th Cir. 2003)); *Perlaza*, 439 F.3d at 1161 ("There is one exception to this 'constitutional jurisdiction' requirement: '[i]f a vessel is deemed stateless, there is no requirement that the government demonstrate a nexus between those on board and the United States before exercising jurisdiction over them." (alteration in original) (citing *Moreno-Morillo*, 334 F.3d at 829)). This Court notes that the Ninth Circuit's use of the word "nexus" as "a constitutional requirement analogous to 'minimum contacts' in personal jurisdictional analysis." *Zakharov*, 468 F.3d at 177 (quoting *United States v. Klimavivius-Viloria*, 144 F.3d 1249, 1257 (9th Cir. 1998)).

(denying motion to dismiss indictment where defendant challenged district court's jurisdiction under MDLEA where no minimum contacts with United States existed because binding precedent established that MDLEA was constitutional as applied to stateless vessels with no ties to United States that are on high seas), this Court need not proceed further. Accordingly, the Motion is **DENIED** in this regard.

IV. **CONCLUSION**

Accordingly, for the reasons set forth herein, it is **ORDERED AND ADJUDGED** that:

1. Mr. Feliz's Motion, (ECF No. 25), and Mr. Castaneda Suarez's Motion, (ECF No. 26), are **GRANTED**.

2. The Motion, (ECF No. 23), is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 9 day of August, 2023.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
All Counsel of Record